1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT

8            EASTERN DISTRICT OF CALIFORNIA

9

10

JOEL LAMAR WYRICK,              ) 1:10-cv—00975-SKO-HC
11                              )
              Petitioner,        ) ORDER SUBSTITUTING MATTHEW CATE
12                              ) AS RESPONDENT
                                 )
13      v.                       ) ORDER DENYING THE PETITION FOR
                                 ) WRIT OF HABEAS CORPUS (DOC. 1)
14  MATTHEW CATE, Secretary of the) AND DIRECTING THE ENTRY OF
    California Department of      ) JUDGMENT FOR RESPONDENT
15  Corrections and              )
    Rehabilitation,              ) ORDER DECLINING TO ISSUE A
16                              ) CERTIFICATE OF APPEALABILITY
              Respondent.        )
17                              )
_____)
18

19      Petitioner is a state prisoner proceeding pro se and in

20  forma pauperis with a petition for writ of habeas corpus pursuant

21  to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the

22  parties have consented to the jurisdiction of the United States

23  Magistrate Judge to conduct all further proceedings in the case,

24  including the entry of final judgment, by manifesting consent in

25  writings signed by the parties or their representatives and filed

26  by Petitioner on June 17, 2010 (doc. 9), and by Respondent on

27  December 16, 2010 (doc. 17).  Pending before the Court is the

28  petition, which was filed on May 21, 2010, and transferred to

1

this Court on June 1, 2010.  Respondent filed an answer to the petition with supporting documentation on February 3, 2011. Petitioner filed a traverse on February 28, 2011.

   I.   Jurisdiction and Substitution of Respondent

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his Constitutional rights.  The challenged judgment was rendered by the Kern County Superior Court (KCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

A petitioner who seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 must be in custody at the time the petition is filed, or the Court lacks jurisdiction over the proceeding.  28 U.S.C. §§ 2241(c)(3), 2254(a); Maleng v. Cook, 490 U.S. 488, 490 (1989).  A prisoner who has been released on parole is still "in custody" under his unexpired sentence because release on parole is not unconditional.  Jones v. Cunningham, 371 U.S. 236, 242

2

(1963).  Here, Petitioner filed a change of address reflecting

that as of May 26, 2011, he was released on parole (doc. 22).

When Petitioner was sentenced to a six-year term, he was

advised that when he was released, he would be on parole for up

to five years.  (3 RT 405-06.)  Respondent was served with

Petitioner's notice of change of address but did not submit any

indication that Petitioner's release rendered the case moot.  In

light of the foregoing and the provisions of Cal. Pen. Code §

3060 concerning the length of parole periods, it appears that

Petitioner presently remains in custody for the purposes of this

proceeding.

Respondent filed an answer on behalf of Respondent Randy

Grounds, Warden at the Correctional Training Facility at Soledad,

California, where Petitioner alleged he was incarcerated at the

time the petition was filed.  Petitioner thus named as Respondent

a person who had custody of the Petitioner within the meaning of

28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section

2254 Cases in the District Courts (Habeas Rules).  See, Stanley

v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

With respect to the proper Respondent in this proceeding in

light of Petitioner's release on parole, the statutes contemplate

a proceeding against a person who has the immediate custody of

the prisoner and the power to produce the body of the prisoner.

28 U.S.C. §§ 2242, 2243; Rumsfeld v. Padilla, 542 U.S. 426, 434-

35 (2004).  Naming the California Director of Corrections in

place of the warden of the institution where a petitioner is

housed does not deprive the court of personal jurisdiction over

the respondent where the petitioner is a state prisoner bringing

a challenge to a conviction sustained within the jurisdiction of the California Department of Corrections.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894-95 (9th Cir. 1996) (warden of a California prison and California's Director of Corrections had the power to produce the prisoner; both might receive service of process; and the laws of the state put the custody of the prisoner in the director).  Where a prisoner has been transferred or where his immediate custodian has otherwise been put in doubt, the Director of Corrections serves as an effective respondent and eliminates procedural roadblocks to resolution of the case on the merits.  Id. at 896.

As of July 1, 2005, Cal. Pen. Code § 5050 abolished the office of the Director of Corrections and provided that any reference to the Director of Corrections in any code refers to the Secretary of the California Department of Corrections and Rehabilitation (CDCR).  Accordingly, the Court therefore concludes that Matthew Cate, Secretary of the CDCR, is an appropriate respondent in this action, and pursuant to Fed. R. Civ. P. 25(d), he should be substituted in place of Respondent Randy Grounds.  The Court will order the substitution.

II.  Procedural Summary

Petitioner raises claims relating to pre-trial and trial proceedings.

Petitioner was charged with having possessed cocaine base for sale on or about June 19, 2006, in violation of Cal. Health & Saf. Code § 11351.5.  He had multiple prior felony convictions within the meaning of Cal. Pen. Code §§ 667 and 1170.12, and had served multiple separate prior prison terms within the meaning of

Cal. Pen. Code § 667.5(b).  (CT 20-22.)  Trial commenced on March 12, 2007, and concluded on March 13, 2007.  (CT 117-22, 158-60.) Petitioner was acquitted of possession for sale but was convicted of the lesser included offense of possession in violation of Cal. Health & Saf. Code § 11350(a).  (Id. at 160.)  The trial court found that some of the allegations concerning prior convictions and prison terms were true.  (Id. at 162.)  Petitioner was sentenced to six years in prison on April 17, 2007.  (Id. at 209.)

Petitioner filed a timely appeal from the judgment on April 19, 2007.  (Id. at 215.)  In an opinion filed on July 30, 2008, in People v. Joel Lamar Wyrick, case number F052721, the Court of Appeal of California, Fifth Appellate District (CCA) ordered the abstract of judgment amended to reflect conviction of simple possession of a controlled substance but otherwise affirmed the judgment. (Ans., doc. 18, 26-30.)  There is no indication that Petitioner petitioned for review of the CCA's decision in the California Supreme Court.

Petitioner filed a petition for writ of habeas corpus in the KCSC on January 6, 2009, which was denied.  The court 1) found Petitioner's claim of admission of evidence obtained by an illegal search and seizure was not subject to review on habeas corpus but, in any event, was not meritorious; 2) concluded that Petitioner's claim regarding insufficiency of the evidence to support a finding of guilt of possession of cocaine base was not cognizable on habeas corpus in view of the CCA's rejection of it on appeal and its determination that there was sufficient evidence of the chain of custody of the cocaine after its seizure

1  and until its receipt at the laboratory; 3) ruled that Petitioner

2  did not state a claim regarding misconduct of the prosecutor and

3  the trial court with respect to the identification of the

4  substance seized from Petitioner; and 4) rejected Petitioner's

5  claims concerning trial counsel's conflict of interest, failure

6  to investigate, and omissions concerning suppression of evidence,

7  objections to testimony, and motions for acquittal, concluding

8  that Petitioner had not shown any ineffectiveness, let alone

9  prejudice.  (LD 4-5.)

10      Petitioner filed a petition for writ of habeas corpus in the

11  CCA on April 17, 2009.  The CCA denied the petition, rejecting as

12  not cognizable in habeas proceedings Petitioner's claims

13  concerning evidentiary rulings, search and seizure, sufficiency

14  of the evidence, chain of custody, and any claims that could have

15  been raised on appeal.  Petitioner's remaining claims were

16  determined to be conclusional.  (LD 7.)

17      Petitioner filed a petition for writ of habeas corpus in the

18  California Supreme Court (CSC) on August 14, 2009.  It was denied

19  without a statement of reasoning or authority on February 3,

20  2010.  (LD 9.)

21      III.  <u>Factual Summary</u>

22      In a habeas proceeding brought by a person in custody

23  pursuant to a judgment of a state court, a determination of a

24  factual issue made by a state court shall be presumed to be

25  correct.  The petitioner has the burden of producing clear and

26  convincing evidence to rebut the presumption of correctness.  28

27  U.S.C. § 2254(e)(1); <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48

28  (9th Cir. 2004).  The following factual summary is taken from the

opinion of the California Court of Appeal, Fifth Appellate District, in People v. Wyrick, case number F052721, filed on July 30, 2008.  See, Galvan v. Alaska Dep't. Of Corrections, 397 F.3d 1198, 1199 n.1 (9th Cir. 2005) (setting forth a factual summary from the state appellate court's decision).

FACTS

On June 19, 2006, Officers Eric Lantz and Patrick Mara were on patrol in an area known for drugs and prostitution. The officers turned on their emergency lights and stopped a vehicle because its license plate light was out and there were objects hanging from the rear view mirror. As they were following the vehicle, Lantz noticed the driver lean forward to his left and could see him moving his shoulder as if he was either sticking something into the seat or retrieving something. The vehicle eventually pulled over, and the officers approached the car. Lantz recognized the driver, appellant, as an individual he knew was on parole, so he searched him. Mara pat searched the female passenger, Felisha Wallace, and searched the car, but found nothing. Mara walked Wallace about 30 to 40 feet away, and positioned her so she was facing away from Officer Lanz and appellant.

While Officer Lantz was searching appellant, he noticed that the elastic waistband on one side of appellant's underwear was folded under and, based on his training and experience, Lantz believed appellant was hiding narcotics in his buttocks. Lantz told appellant of his suspicions, and appellant reached into the back of his pants and removed a plastic bag containing what appeared to be cocaine base. Lantz told appellant he would release him without filing charges if appellant informed him of other criminal activity in the area, so appellant was initially released. However, appellant failed to uphold his end of the bargain, and was eventually charged with possession of cocaine base for sale.

Lantz gave Mara the bagged substance he recovered from appellant. Mara placed the substance in a "k-pack" and locked it in the trunk of the police car. Later that night, Mara booked the evidence into the property room. The evidence was sent to the Kern County Regional Criminalistics Laboratory, where it tested positive for cocaine base.

(Ans. doc. 18, 26, 28.)

IV.    Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings unless
> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Clearly established federal law refers to holdings, as opposed to dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, – U.S. –, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000). It is thus the governing legal principle or principles set forth by the Supreme Court at the pertinent time. Lockyer v. Andrade, 538 U.S. at 71-72.

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002). A state court unreasonably applies clearly

8

established federal law if it either 1) correctly identifies the governing rule but applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410.

A state court's determination that a claim lacks merit precludes federal habeas relief as long fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.  The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state-court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S. Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.

In determining the appropriate deference to be given to a state court decision, it must be determined whether the decision was on the merits within the meaning of 28 U.S.C. § 2254(d), which limits habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings...."  A state has adjudicated a claim on the merits within the meaning of § 2254(d) when it decides the petitioner's right to relief on the basis of the substance of the constitutional claim raised, rather than denying the claim because of a procedural or other rule precluding state court review of the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Thus, where the California

Supreme Court denies a habeas petition without citation or comment, a district court will "look through" the unexplained decision of that state court to the last reasoned decision of a lower court as the relevant state-court determination.  <u>Ylst v. Nunnemaker</u>, 501 U.S. at 803-04; <u>Taylor v. Maddox</u>, 366 F.3d 992, 998 n.5 (9th Cir. 2004).  A petitioner has the burden of overcoming or rebutting the presumption by strong evidence that the presumption, as applied, is wrong.  <u>Ylst</u>, 501 U.S. at 804.

## V.   Unreasonable Search and Seizure

Petitioner argues that when the trial court permitted the introduction of evidence obtained pursuant to an allegedly unreasonable search and seizure, Petitioner's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments were violated, and he was denied due process and equal protection of the laws.

### A.   Background

The record of the trial court proceedings reflects that Petitioner's counsel filed a motion pursuant to Cal. Pen. Code § 1538.5 to suppress cocaine base seized from Petitioner during the traffic stop of the car Petitioner was driving and a related warrantless search of his person on June 19, 2006.  (CT 41-46.) The People filed an opposition, and a hearing was held on February 9, 2007, at which Bakersfield Police Officer Lantz testified on behalf of the prosecution.  After evidence was presented and submitted, and the parties rested, the motion was denied.  (<u>Id.</u> at 55-103.)  Petitioner raised the search and seizure claim in a full round of habeas corpus, with the KCSC and CCA expressly finding that it was not cognizable on habeas

1  corpus.  The KCSC further found that because Petitioner was on

2  parole, and because the stop of the car was made because the

3  officer had observed vehicle code violations (no license plate

4  light and obstruction of the driver's view from the rearview

5  mirror because of hanging objects), no warrant was necessary, and

6  Petitioner himself pulled the drugs out from his underwear.  The

7  court further found that the filing of charges and the subsequent

8  arrest of Petitioner resulted from Petitioner's failure to keep

9  his part of an agreement to act as an informant in exchange for

10 his release.  (LD 5.)

11          B.  Analysis

12     Where the state has provided the petitioner with an

13 opportunity for full and fair litigation of a Fourth Amendment

14 claim, the petitioner may not be granted federal habeas corpus

15 relief on the ground that evidence obtained in an

16 unconstitutional search and seizure was introduced at trial.

17 Stone v. Powell, 428 U.S. 465, 494 (1976).

18     In Stone, the Court did not set forth a test for determining

19 whether a state has provided an opportunity for full and fair

20 litigation of a claim.  However, in a footnote the Court cited

21 Townsend v. Sain, 372 U.S. 293 (1963), which held that a federal

22 court must grant a habeas petitioner an evidentiary hearing if 1)

23 the merits of the factual dispute were not resolved in the state

24 hearing; 2) the state factual determination is not fairly

25 supported by the record as a whole; 3) the fact-finding procedure

26 employed by the state court was not adequate to afford a full and

27 fair hearing; 4) there is a substantial allegation of newly

28 discovered evidence; 5) the material facts were not adequately

1    developed at the state-court hearing; or 6) it appears that the
2    state trier of fact did not afford the habeas applicant a full
3    and fair fact hearing.  Stone v. Powell, 428 U.S. at 494 n.36
4    (citing Townsend v. Sain, 372 U.S. at 313).  Other factors
5    include the extent to which the claims were briefed before, and
6    considered by, the state trial and appellate courts.  Terrovona
7    v. Kincheloe, 912 F.2d 1176, 1178-79 (9th Cir. 1990).

8       Even though a petitioner may contend that the state court's
9    factual findings concerning a search are not supported by the
10   evidence, a petitioner has nevertheless been provided a full and
11   fair opportunity to litigate his search claim where the validity
12   of the search was raised in a pre-trial motion, the trial court
13   held a hearing on the issue where the petitioner was permitted to
14   present evidence and examine witnesses, the trial court made a
15   factual finding, and there was judicial review of the trial
16   court's decision.  Moormann v. Schriro, 426 F.3d 1044, 1053 (9th
17   Cir. 2005).

18      Here, Petitioner fully briefed and presented his claim in
19   the trial court with the assistance of counsel.  His claim was
20   the subject of a hearing where the facts were fully developed in
21   the course of testimony and cross-examination.  The trial court
22   determined the claim on the merits, and the facts fairly support
23   the denial of the motion to suppress.  Petitioner appealed the
24   judgment and had the opportunity to raise before the CCA the
25   trial court's denial of the motion to suppress and the
26   introduction of the fruits of the search.  The circumstances of
27   Petitioner's opportunity to litigate his search claim are
28   analogous to those of the petitioner in Moormann v. Schriro, 426

1  F.3d 1044.

2      As such, Petitioner was afforded a full and fair opportunity

3  to litigate his claim concerning the Fourth Amendment.

4  Therefore, he cannot receive habeas corpus relief on his Fourth

5  Amendment claim or claims in this proceeding pursuant to 28

6  U.S.C. § 2254.[1]

7      VI.   Insufficiency of the Evidence

8      The CCA decided Petitioner's insufficiency of the evidence

9  claim on direct appeal.  In a subsequent round of state court

10  habeas, the KCSC and CCA concluded that the claim was not subject

11  to habeas review because on direct appeal, the CCA had properly

12  determined there was sufficient evidence to support the judgment;

13  thus the issue was not cognizable on habeas corpus.  The

14  California Supreme Court summarily denied the claims on habeas

15  corpus.  Thus, the CCA's decision is the last reasoned decision

16  concerning Petitioner's sufficiency of the evidence claim.

17      A.   Background

18      The decision of the CCA concerning Petitioner's sufficiency

19  of the evidence claim is as follows:

20      I. Substantial Evidence

21      In considering appellant's claim of insufficiency of
         the evidence, we review the entire record in the light
22      most favorable to the prosecution to determine whether
         it contains evidence that is reasonable, credible, and
23      of solid value, from which a rational trier of fact

24  _____

25      [1] Petitioner alleged that there was deliberate deception on the part of
    the trial court and the prosecutor that resulted in allowing illegal evidence
26  to be admitted, which in turn violated Petitioner's rights to due process and
    equal protection, and his rights under the Fourth, Fifth, Sixth, Eighth, and
27  Fourteenth Amendments.  (Pet. 15, 29-30.)  The claim is uncertain.  However,
    in any event, the record does not contain evidence of deliberate deception,
28  and Petitioner did not develop any legal argument in connection with these
    general allegations.  Petitioner has not shown that he is entitled to relief
    on the claim or claim.

could find the elements of the crime beyond a
reasonable doubt. (*In re George T.* (2004) 33 Cal.4th
620, 630-631.)

Appellant contends there is insufficient evidence to
support the finding that the substance that tested
positive for cocaine base was actually seized from his
person. He notes that Officer Mara testified he did not
see Officer Lantz seize the substance from appellant,
and that Wallace testified that she watched Lantz search
appellant and did not see Lantz seize anything from
appellant. However, Lantz testified that he did seize
the substance from appellant, and Wallace was facing
away from Lantz and appellant during the search, so
could not have seen the seizure. Considering the
evidence in a light most favorable to the prosecution,
there is sufficient evidence to uphold the jury's
verdict, as a reasonable trier of fact could have
relied on Lantz's and Mara's testimony and found that
appellant possessed the substance. Furthermore, any
doubt appellant raised regarding potential evidence
tampering was properly left for the jury to weigh.
(*People v. Riser* (1956) 47 Cal.2d 566, 580-581).

Appellant also asserts there is insufficient evidence
to support the finding that the substance Officer Lantz
seized from him was the same substance that tested
positive for cocaine base. He challenges the
sufficiency of the evidence of the chain of custody of
the substance from Officer Mara to the crime lab. He
rests his assertion on the facts that there was no
testimony the substance seized was delivered to the
crime lab, that Mara and Lantz did not identify the
substance in the crime lab as the same as that seized
at the crime scene, that Lantz could not describe the
size of the substance he seized, and that Mara, who
transported the drugs from the scene to the property
room, did not file a police report.

The existence of a chain of custody is an issue for the
finder of fact. As *People v. Catlin* (2001) 26 Cal.4th
81, 134 explained:

> "In a chain of custody claim, ' "[t]he burden
> on the party offering the evidence is to show
> to the satisfaction of the trial court that,
> taking all the circumstances into account
> including the ease or difficulty with which
> the particular evidence could have been
> altered, it is reasonably certain that there
> was no alteration. [¶] The requirement of
> reasonable certainty is not met when some
> vital link in the chain of possession is not
> accounted for, because then it is as likely
> as not that the evidence analyzed was not the

15

> evidence originally received. Left to such
> speculation the court must exclude the
> evidence. [Citations.] Conversely, when it is
> the barest speculation that there was
> tampering, it is proper to admit the evidence
> and let what doubt remains go to its weight."
> [Citations.]' [Citations]"

Furthermore, direct testimony is not necessary to
establish every link in the chain of custody to a
reasonable certainty. (*People v. Catlin, supra*, 26
Cal.4th at pp. 134-135 [tissue samples labeled with
identification numbers at time of autopsy sufficient to
establish that tissue came from the body of the
deceased].)

In the instant case the evidence establishing a chain
of custody was sufficient. Officer Mara secured the
substance in a "k-pack" and booked it into the property
room. While there was no direct testimony that the same
substance was moved from the property room to the crime
lab, Gregory Laskowski, a supervising criminalist at
Kern County Regional Criminalistics Laboratory,
testified that all evidence must come to the crime lab
in a sealed package with a photo of the contents taken
by the submitting law enforcement agency. When the
package arrives, an analyst compares the contents of
the package with the photo to ensure they match up.

The exhibits submitted by the prosecution at trial
demonstrated a chain of custody. Exhibit 3, the photo
of the substance taken by the police, and exhibit 2,
the photo of the substance taken by the crime lab, look
substantially similar, and the package in each photo
has the same crime lab number, DR06-01912-01. Exhibit
1, the crime lab report, also has the same crime lab
number, lists appellant as the suspect, and has the
same case number as exhibit 3, 06-126390. The crime lab
report states that the description of the substance
that arrived at the crime lab in a sealed envelope
matches the description of the substance seized by
Lantz.

Appellant attempts to analogize his case to several
cases where the court found the evidence of chain of
custody insufficient. (*American Mutual Etc. Co. v.
Industrial Acc. Com.* (1947) 78 Cal.App.2d 493; *People
v. Smith* (1921) 55 Cal.App. 324; *McGowan v. Los Angeles*
(1950) 100 Cal.App.2d 386.) In these cases, the
testimony given by the laboratory technicians was
insufficient because there was no evidence tying the
substance tested back to the scene of the crime. However, in this
case, there was evidence the substance in question came from the
crime scene, including the testimony of Officers Mara and Lantz,
and the information from exhibits 1 through 3 identifying the

substance in the laboratory as the same substance seized from appellant.

> Appellant also attempts to distinguish his case from *People v. Bailey* (1991) 1 Cal.App.4th 459, where the defendant's conviction for possession of cocaine was upheld. However, in *Bailey* the issue was whether the evidence showed that "rock cocaine" was "cocaine base." (Id. at pp. 462-463.) *Bailey* did not consider whether the evidence was sufficient to show that the substance seized from the defendant was the same substance tested in a crime lab, and therefore has no bearing on the instant case.

(Doc. 18, 28-29.)

### B. Analysis

To determine whether a conviction violates the constitutional guarantees of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light that is the most favorable to the prosecution. Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts. It must be, therefore, assumed that the trier resolved all conflicts in a manner that supports the verdict. Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008. The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).

Circumstantial evidence and reasonable inferences therefrom can be sufficient to prove any fact and to sustain a conviction; however, mere suspicion or speculation does not rise to the level of sufficient evidence. United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v. Wood, 207 F.3d at 563. The court must base its determination of the sufficiency of the evidence from a review of the record. Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. Further, under the AEDPA, federal courts must apply the Jackson standard with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standards to the facts of the case. Id. at 1275.

Here, the state court articulated a standard of review consistent with the Jackson standard. It viewed the evidence in a light most favorable to the prosecution and considered the totality of the evidence and the inferences that a rational trier of fact would draw. It was not an objectively unreasonable application of the Jackson standard for the state court to conclude that 1) the testimony of the officers was sufficient to support a finding that the controlled substance was seized from Petitioner's person; and 2) testimony and other evidence of the circumstances surrounding the substance's seizure, packaging, transport, identification, and labeling, including photographic

1  and other documentary evidence, were sufficient to support a

2  finding of a chain of custody and that the substance seized from

3  Petitioner was the same substance analyzed in the crime

4  laboratory.

5       The state court's decision was not contrary to, or an

6  unreasonable application of, the clearly established federal law

7  reflected in the Jackson standard.   Petitioner is, therefore, not

8  entitled to relief on his claim concerning the alleged

9  insufficiency of the evidence.

10      VII.   Ineffective Assistance of Counsel

11           A.   Exhaustion of State Court Remedies

12      In the state courts, Petitioner alleged generally that he

13  was deprived of his right to conflict-free counsel, and that

14  counsel failed to perform competently at trial and made

15  unreasonable tactical decisions based on an inadequate

16  investigation.  (LD 6, LD 8.)

17      These allegations were general; the only specific

18  information Petitioner cited was counsel's alleged failure to

19  know that at the time Petitioner was detained and the cocaine was

20  discovered, his companion, Wallace, was on probation for a felony

21  conviction of possession of marijuana.  Petitioner submitted

22  portions of Wallace's trial testimony that confirmed Wallace's

23  probation status to support these allegations.  (RT 243-44.)

24  However, the transcript also showed that during Wallace's direct

25  examination, defense counsel asked if she had inquired of the

26  officers if the incident involving the stop was something she

27  should report to her probation officer.  (RT 237.)  This

28  demonstrates that defense counsel knew Wallace was on probation.

In view of Wallace's status as the sole non-law-enforcement, defense witness to the seizure, and her claim that she was testifying to state the truth despite being on parole and being reluctant to testify, Petitioner has not shown that his counsel's ignorance of the nature of the offense for which Wallace was on probation was prejudicial.

Petitioner raises the same generalized allegations of ineffective assistance of counsel in the present proceeding. (Pet. 43-46.)  In his petition, Petitioner further alleges that he was not advised of his <u>Miranda</u> rights and that his trial counsel was ineffective for failing to 1) raise the <u>Miranda</u> issue after Petitioner requested him to do so before trial; 2) challenge the sufficiency of the justification for the stop or argue that the stop was without probable cause; 3) raise other issues not specified in the petition but referred to in his motion for the substitution of counsel, including failure to attempt to get a DNA or fingerprint sample from the packaging of the contraband allegedly carried in Petitioner's buttocks (counsel had apparently advised that it could implicate Petitioner and exonerate him), failure to obtain photographs of the location, the tail lights and the dispatch tapes, and failure to exclude Petitioner's prior convictions (counsel had prepared an in limine motion to exclude them).  (Doc. 1-1, 1, 5-7, 10, 12-13-14, 16, 18-23.)  He raises related issues concerning the trial court's denial of his motion for substitution of counsel. (<u>Id.</u> at 8.)  With respect to the officers' initial observation and apprehension of Petitioner, Petitioner implies that counsel failed to argue inconsistencies in the officers' testimony and to

1   investigate and impeach them with evidence concerning the

2   topography of the location of the stop.  (Id. at 8-9.)

3       Petitioner attempted to submit to the California Supreme

4   Court all or part of the request for judicial notice that

5   accompanies Petitioner's present petition.  (Doc. 1-3, 50.)   The

6   docket of Wyrick v. Grounds, case number S175551, reflects that a

7   request for judicial notice was received before the petition was

8   denied, but it does not appear to have been filed.[2]   Petitioner

9   also submits his correspondence with the Supreme Court after the

10  petition was denied in which a deputy clerk of the court returned

11  his motion to take judicial notice and request for

12  reconsideration, noting that the denial of petition had been

13  final forthwith and could not be reconsidered, and reassuring

14  Petitioner that the court had considered the "petition, and the

15  contentions made therein."  (Doc. 1-3, 38.)

16      The extent of the documentation and factual claims presented

17  to the California Supreme Court is unclear.  Although Respondent

18  argues that the claim was unexhausted, Respondent also contends

19  that notwithstanding a failure to exhaust state court remedies as

20  to his ineffective assistance claims, the state court's

21  conclusion that Petitioner failed to show that trial counsel was

22  ineffective was not objectively unreasonable.  In view of the

23

24        [2] The Court may take judicial notice of facts that are capable of
    accurate and ready determination by resort to sources whose accuracy cannot
25  reasonably be questioned, including undisputed information posted on official
    web sites.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331,
26  333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d
    992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the
27  docket sheet of a California court.  White v Martel, 601 F.3d 882, 885 (9th
    Cir. 2010), cert. denied, 131 S.Ct. 332 (2010).  The address of the official
28  website of the California state courts is www.courts.ca.gov.

1  uncertainty as to the record before the California Supreme Court,

2  this Court will address Petitioner's ineffective assistance claim

3  on the merits.

B.  Legal Standards

4

5      The law governing claims concerning ineffective assistance

6  of counsel is clearly established for the purposes of the AEDPA

7  deference standard set forth in 28 U.S.C. § 2254(d).  Premo v.

8  Moore, –U.S. –, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151

9  F.3d 1226, 1229 n.2 (9th Cir. 1998).

10     To demonstrate ineffective assistance of counsel in

11 violation of the Sixth and Fourteenth Amendments, a convicted

12 defendant must show that 1) counsel's representation fell below

13 an objective standard of reasonableness under prevailing

14 professional norms in light of all the circumstances of the

15 particular case; and 2) unless prejudice is presumed, it is

16 reasonably probable that, but for counsel's errors, the result of

17 the proceeding would have been different.  Strickland v.

18 Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d

19 344, 346 (9th Cir. 1994).  A petitioner must identify the acts or

20 omissions of counsel that are alleged to have been deficient.

21 Strickland, 466 U.S. at 690.  This standard is the same standard

22 that is applied on direct appeal and in a motion for a new trial.

23 Id. at 697-98.

24     In determining whether counsel's conduct was deficient, a

25 court should consider the overall performance of counsel from the

26 perspective of counsel at the time of the representation.

27 Strickland, 466 U.S. at 689.  There is a strong presumption that

28 counsel's conduct was adequate and within the exercise of

reasonable professional judgment and the wide range of reasonable professional assistance. Id. at 688-90. The challenger must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

In determining prejudice, a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. Strickland, 466 U.S. at 694. In the context of a trial, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt. Id. at 695. This Court must consider the totality of the evidence before the fact finder and determine whether the substandard representation rendered the proceeding fundamentally unfair or the results unreliable. Id. at 687, 696.

Where the state court has applied the correct, clearly established federal law to a claim concerning the ineffective assistance of counsel, a federal district court analyzes the claim under the "unreasonable application" clause of § 2254(d)(1), pursuant to which habeas relief is warranted where the correct law was unreasonably applied to the facts. Weighall v. Middle, 215 F.3d 1058, 1062-62 (2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)).

The Supreme Court has described the high bar presented by § 2254(d)(1) for prevailing on a claim of ineffective assistance of counsel:

> "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of

reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...

" 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ---- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id., at 689 [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles, 556 U.S., at ----, 129 S.Ct., at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness

24

under <u>Strickland</u> with unreasonableness under § 2254(d).
When § 2254(d) applies, the question is not whether
counsel's actions were reasonable. The question is
whether there is any reasonable argument that counsel
satisfied <u>Strickland's</u> deferential standard."

<u>Premo v. Moore</u>, -U.S. -, 131 S.Ct. 733, 739-40 (2011) (quoting

<u>Harrington v. Richter</u>, 131 S.Ct. 770).

C. <u>Analysis</u>

Petitioner has failed to show that counsel had a conflict of

interest.  Similarly, no specific unreasonable tactical or

strategic decisions have been demonstrated.  As to these general

allegations, a state court could reasonably have determined that

Petitioner had neither shown sub-standard conduct by counsel nor

prejudice.

Petitioner alleged that counsel had failed to investigate

and did not know Wallace was on probation for felony conviction

of possession of marijuana.  In support of this allegation,

Petitioner submitted portions of Wallace's trial testimony that

confirmed Wallace's probation status.  (RT 243-44.)  However, the

transcript also showed that during his direct examination of

Wallace, defense counsel asked Wallace if she had inquired of the

officers if the incident involving the stop was something that

she should report to her probation officer.  (RT 237.)  This

shows that defense counsel at least knew that Wallace was on

probation.

The evidence of Petitioner's possession of the controlled

substance depended on the truth of the detaining officers'

testimony.  In view of Wallace's status as the sole non-law-

enforcement defense witness to the detention and seizure, and her

claim that she was testifying to state the truth despite his

25

1   parole status and reluctance to testify, Petitioner has not shown

2   that if counsel was ignorant of the nature of the offense for

3   which Wallace was on probation, Petitioner suffered any prejudice

4   as a result.  The state court could reasonably have concluded

5   that counsel rationally decided to call Wallace as a witness

6   despite her probationary status.

7       Petitioner argued that his trial counsel was ineffective for

8   not raising the alleged failure of the officers to advise

9   Petitioner of his rights pursuant to Miranda v. Arizona.  The

10  evidence of Petitioner's possession of the cocaine consisted of

11  physical evidence discovered in the course of a parole search.

12  (CT 77.)  The search was independent of any statement by

13  Petitioner to the officers, and discovery of the contraband in

14  the course of the parole search was inevitable.  Thus, the state

15  court could reasonably have concluded that Petitioner had not

16  shown that any prejudice resulted from the failure of counsel to

17  raise a Miranda violation.  Indeed, Petitioner negotiated an

18  agreement to provide the officers with information, and he was

19  released pursuant to that agreement.

20      Counsel did make a motion to suppress the evidence that was

21  disclosed during the course of the search.  However, Cal. Pen.

22  Code § 3067(a) provides that an inmate eligible for release on

23  parole shall agree in writing to be subject to search or seizure

24  by a parole officer or other peace officer at any time of the day

25  or night, with or without a search warrant and with or without

26  cause.  There is no basis in the record for a conclusion that

27  § 3067(a) did not apply to Petitioner.  It is well settled that a

28  search of a California parolee who has given consent pursuant to

§ 3067(a) does not violate the Fourth Amendment.  <u>Samson v. California</u>, 547 U.S. 843, 846 (2006).  The state court could reasonably have concluded that counsel was not ineffective because it would have been futile for counsel to have moved to suppress the evidence as the fruit of a search and seizure without probable cause or justification.  <u>Cf.</u>, <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994) (failure to make a motion which would not have been legally meritorious does not constitute ineffective assistance of counsel).

Petitioner has not shown that the absence of a DNA or fingerprint sample from the packaging of the contraband carried in Petitioner's buttocks resulted in any prejudice.  Nor has Petitioner shown that it was even likely that the material was subject to DNA or fingerprint analysis.  The presence of the fingerprints or DNA of others would not necessarily have exculpated Petitioner; the presence of Petitioner's fingerprints or DNA would have been incriminating.  Thus, the state court could reasonably have concluded that counsel made an informed tactical decision not to seek the testing.

The state court could reasonably have concluded that no prejudice resulted from any failure of counsel to obtain dispatch tapes or photographs of Petitioner's tail lights or the vicinity of the detention.  Because the parole search of Petitioner did not require probable cause or suspicion, information tending to undermine a basis for suspicion would not have affected the result of Petitioner's trial.  The officers' testimony was not materially inconsistent, and their testimony foreclosed Wallace's claim that she was able to observe the search of Petitioner and

1   would have seen any seizure of cocaine.  Likewise, the state

2   court could have reasonably concluded that because counsel had

3   moved to exclude Petitioner's prior convictions, no substandard

4   omission had been shown in connection with the prior convictions.

5   In sum, the Court concludes that the state court decision

6   that Petitioner's trial counsel was not prejudicially ineffective

7   was not contrary to, or an unreasonable application of, the

8   Strickland standard.  Further, because trial counsel was not

9   prejudicially ineffective, appellate counsel could not have been

10  ineffective in failing to raise trial counsel's omissions.

11  Accordingly, this Court concludes that Petitioner is not

12  entitled to relief on his claim or claims concerning the

13  ineffective assistance of counsel.

14      VIII.  Certificate of Appealablity

15  Unless a circuit justice or judge issues a certificate of

16  appealability, an appeal may not be taken to the Court of Appeals

17  from the final order in a habeas proceeding in which the

18  detention complained of arises out of process issued by a state

19  court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

20  U.S. 322, 336 (2003).  A certificate of appealability may issue

21  only if the applicant makes a substantial showing of the denial

22  of a constitutional right.  § 2253(c)(2).  Under this standard, a

23  petitioner must show that reasonable jurists could debate whether

24  the petition should have been resolved in a different manner or

25  that the issues presented were adequate to deserve encouragement

26  to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336

27  (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

28  certificate should issue if the Petitioner shows that jurists of

28

reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. <u>Id.</u> It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed. <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

IX. <u>Disposition</u>

Accordingly, it is ORDERED that:

1) Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, is SUBSTITUTED as Respondent; and

2) The petition for writ of habeas corpus is DENIED; and

3) The Clerk is DIRECTED to enter judgment for Respondent;

and

    4)  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:**   **May 16, 2012**                        **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE